We'll be happy to hear from you, Counsel. Thank you very much. It took me just a moment. I was having a bit of a wardrobe malfunction there. May it please the Court. Jamie Halscott, Counsel for Appellant Halscott Megaro. This case is actually a lot simpler than it appears. This is a case about a law firm that spent almost three and a half years representing two gentlemen, Leon Brown and Henry McCollum, in a case where they were wrongfully incarcerated. Wrongful incarceration that led to tremendous damage to them. We recognize this, and we were brought in as a law firm from outside the state of North Carolina to provide objective services to them. We were retained by Henry and Leon and their sister, General Dean Brown, to prosecute a 1983 civil rights action. Precursor to that 1983 civil rights action was a requirement for a pardon of actual innocence. Now, in this particular case, there had been litigation going on for roughly 20 years, from 1983 until 2014, through the forms of civil litigation, through a motion for appropriate relief, criminal cases, all the way up to the United States Supreme Court, back down again, back up again. No less than 14 separate judges in state and federal courts addressed the various different issues of this case before we were brought on board. The law firm came in under the retainer for three and a half years represented these gentlemen. During that time period, as soon as we saw that there was any question whatsoever about any kind of mental incompetence or inability to proceed, the first thing we did was put a guardian in place. That happened in Cumberland County. Cumberland County Court decided to put in General Dean Ransom Brown, the closest living relative to Leon Brown, who, once he had left prison, failed to take his antipsychotic medication that he had been prescribed since a juvenile for the traumas that he had been experiencing in prison. General Dean served as the guardian until she was removed by the court. She tried to take money from them. She was caught by Hall Scott McGarrow, reported to the court. The court then substituted in a North Carolina attorney, Duane Gillum, to be the guardian for Leon Brown, who then served with us for the next two years. So a period of three years, two different guardians were put in place to ensure the rights were protected for Leon Brown. Henry McCollum, his brother, slightly older, slightly different scenario, one that we believed, objectively, could handle his affairs. Again, no less than 14 different judges, prosecutors, including another law firm, three separate attorneys that were hired. And the opposing counsel will rely on the disciplinary hearing of Patrick McGarrow, which is the 800-pound gorilla in the room here. They're going to rely on that to say that we knew or should have known. That's not the case. Because we were actually the second 1983 civil rights firm to come into the case. And that's very— So, counsel, let me, if I could just interrupt you, and I appreciate that. I'll give you time to go back to it. But I'm trying to understand one aspect of your argument. And it sounds like one of the things you're saying, maybe, that's what I'm trying to find out, is that the conclusions reached by the North Carolina Disciplinary Agency somehow didn't take all the circumstances into consideration. It may have been wrong. And that's one way you could say, proceed, maybe. And maybe you're doing that, maybe you're not. As the district court found, that the court can take judicial notice of administrative agency. It went through that test. It can consider third parties through privity. And it went through the law there. So, what I'm really trying to figure out is, is your argument that there are facts that pertain to the law firm that are different than pertain to the lawyer who was handling the case and who was disciplined? Or is your argument that the disciplinary proceedings didn't get the full picture? I think it's both of those, Your Honor. Let me just, do however you want. But I'm particularly interested in the former, that how there's a difference and what would happen to pursue that. So, you can make whatever argument you want, but that's the one I'm interested in. Of course. Then let me jump out with the privity issue. That's the big thing here, because we're dealing with two things. Patrick McGarrow bad. Patrick McGarrow and Halstead McGarrow are the same thing. That's really the simple, boiled-down explanation of what is being written about in Judge Boyle's order. Privity requires a mutual interest to the same right that one party is representing as applies to the other. And this is not my case law. This is the case law from Judge Boyle and the case law from opposing counsel. I'm using all of their case law. It's very solid, but their application of the facts to it is wrong. Here, specifically, we're looking at what was McGarrow's interest in the DHC? Was McGarrow's interest in getting paid for the case? Or was McGarrow's interest in saving his law license and his ability to practice law? So, let me take a step back on the privity issue. I mean, to me, the straightforward basis for privity is, and tell me if I'm wrong, McGarrow is a named partner of the law firm, and every single act of misconduct he was found to have engaged in, he was engaged in in his capacity and on behalf of the law firm. Is that not right? I don't believe that's a correct characterization of it. Well, for example, when he signed what was found to be a fraudulent invalid retainer agreement, he signed it in his capacity as a partner of the law firm. And, in fact, when I looked at it, he signed it on behalf of the law firm, right? Is that right? The law firm has to be the retainer. The retainer is with the law firm. Sure. So, he wasn't just some guy. It wasn't even Judge Richardson and I are law partners, and I go do something bad that doesn't involve him. I go do something bad in my capacity and on behalf of the law firm of Heitens and Richardson, right? Richardson and Heitens. Fair enough. As the first named partner, I can understand the desire of Judge Richardson for having that. I get that argument. But here's the problem, and what I was alluding to with another 1983 civil rights law firm that came in before us. That one was hand-picked by Ken Rose. Now, you've reviewed the records. You know the Disciplinary Hearing Commission. You know Ken Rose's stance on Patrick McGarrow, that he didn't like Patrick McGarrow. He didn't like that he was coming in to represent. He didn't like the relationship there. He went to the North Carolina bar and tried to have him removed. The North Carolina bar said, absolutely, that's not going to happen. This is all in the DHC transcripts. I'm sorry. I just don't understand what this has to do with whether or not the law firm is in privity with its partner when its partner does something on behalf of the law firm. Because we are focused in this case, Judge Heitens, you're focused specifically on the retainer. The retainer isn't really the misconduct that… That's part of it. They talk about the terms of retainer. They talk about then some other things, such as the loans that were done. Is your position that McGarrow was acting outside the scope of his authority as one of the two main partners in the law firm? I'm taking the position that Halstead McGarrow didn't have a chance to address the retainer itself and whether or not it should have been valid and what the reasons were for the retainer the way it was. No one's ever taken issue with the amount of the retainer agreement. Can you answer my question? Maybe this is premature, so an answer might be I'm not prepared to do that now. Is it your position that Mr. McGarrow was acting outside the scope of his authority as a partner in the acts that the North Carolina Disciplinary Agency issued its decision on? Many of them, yes, Your Honor. Yes, and again, there were about 20 different allegations, about half of which were ones that there was evidence for and half that there weren't. But not everything was… If we focus on the retainer, yes, Patrick McGarrow had the retainer signed for Halstead McGarrow. To this day, I still have no problems with the retainer. The retainer's language is clear. The retainer's language is not… But one of the findings is you have no business entering into a retainer agreement with a person who, according to the finding, is obviously incapable of signing this retainer agreement. That's one of the findings about what's wrong with… When we say the retainer, I don't just mean the four corners of the retainer. It's signing a contract with a person who lacked legal capacity to sign that agreement. That's the weird thing. If we look at the joint appendix, page 27, paragraphs 13 and 14, we look at Mike Lewis, Mark Rebill, Tom Howlett. Ken Rose handpicked them to be the 1983 civil rights case. The attorney needs to handle that. And it says specifically in the findings of law that was a contingency fee agreement. So why is it okay for the law firm that Ken Rose handpicked, but then when Ken Rose goes to the North Carolina Bar and says, get these guys off the case, and then he goes to Joe Neff, who's a reporter… Can I go back to there being no problem with the fee agreement? What about the fact that this was an irrevocable fee, that it purported to establish an irrevocable fee? You have no trouble with an irrevocable one-third fee or something like that? I have trouble with that classification of that. Now, if we were to treat that as a charging lien, which is the word that was bantied about many times, all this means, and we said it in open court, it was acknowledged to Judge Boyle, that this was exerting, that we would be able to go after them for the fees that were earned by us. That's in the case of either a breach of contract or quantum merit or an unjust enrichment, which is all of the three different avenues we tried for this. That just says we're not going to give away our fee just because you go away. So that's not what it meant at all. And we specifically and repeatedly said this was not a charging lien. And in the seven cases of charging liens in the state of North Carolina that have ever resulted in discipline, no attorney, and they've actually said to the court, I have a charging lien. Not one of those has resulted in anything other than a warning, just an admonition. Say, don't do that. Don't insert those things. So the court is going back retrospectively and asking us to have understood the entire case before we got on the case. Once we reasonably saw that there was any kind of decompensation or any kind of competency issues, the first thing we did was guardian. We put a guardian in place. And when that guardian was failing, we went and protected their rights by putting another guardian in place. It sounds like you're, this year in Title II, embracing what Mr. Magaro did and was, you know, in disagreeing with the conclusions that it was wrongful. And I get that. I'm understanding somewhat what you're saying. I may agree or disagree. Yeah. And, you know, but that, you know, that doesn't seem to be to the thing I asked about earlier, which is, are you saying, you know, we're not privity because he was acting outside of what we do as a law firm? And I thought I answered that, Your Honor, that some of those things were outside of it. If we're talking about him giving money for living expenses to them, which was one of the big things they nailed him on, or taking, you know, taking a loan to do things through Daryl Hamilton, or Derek Hamilton, excuse me, in there, those are outside of that. Well, so let me give you one that I've now got the, I was looking at. So this is JA40. This is from the disciplinary order. By charging an irrevocable, this is the finding of discipline against Mr. McGarrett. By claiming an irrevocable interest in McCollum and Brown's potential financial payments from the state, defendant charged an improper fee in violation of Rule 1.15a and engaged in conduct involving dishonesty, fraud, or misrepresentation in violation of Rule 8.4c. That is a finding by the disciplinary board that said there was something about this fee that you've agreed was done in his capacity as a law firm that was improper and violated the North Carolina rules. The court or the district or the DHC conflates those two issues there. Well, that's an argument there. Look, I completely, as Judge Plotman was saying, I completely understand that you may feel very strongly that they got it wrong. But that's sort of not how preclusion works. When preclusion applies, preclusion precludes us from asking whether someone got something wrong. And the only argument I can see for why preclusion doesn't apply is the privity argument. So unless there's not privity, I think that's just a fact about the world that we're stuck with. Well, all of the case law that we have here says the privity requires full. Sure, but that's an argument that they're not in privity, not an argument that they got it wrong. Exactly. Of course I think they got it wrong. But the argument of privity that I'm making is that it requires a full alignment, and there was not a full alignment. There never was. What do you say? I mean, I know we don't have discovery. But sitting here right now, what would you argue to me that says y'all aren't in privity? That the law firm was unaware of some of those actions of Patrick McGarrow. He took actions outside of the scope of his duty to his clients and duty to the retainer and duty to the law firm. And in doing so, put himself in this position. But for those actions, the DHC might have had a different conclusion. Okay, maybe this is a charging lien, but it's only an admonition, but you can move forward with it. But nonetheless, if we go further than this, the last thing I need to get in here is that this retainer was ratified. We had guardians ad litem in place for the case, and they said no problem. But again, that's just again that it's relitigating the outcome of the disciplinary proceedings. And I think if you're in privity, you can't do that. No, the disciplinary commission went backwards in time. The case was – we're talking 2021. We're going back to 2017, 2018. The court, the guardians ad litem, an open court testified, yes, we want them to stay on as the counsel. We want them to do this work. We had attorneys. These are North Carolina licensed attorneys, one put on by Judge Boyle, who said that's fine. We're going to have them continue to represent. So that's where the quantum merriwet argument comes in there. You can't have someone represent and do the work and then say, oh, by the way, ha-ha, two years, three years later, we're going to clip you and go backwards retrospectively and say you should have known these things, even though they've all been litigated in court already. We can't have privity when we want and not when we don't. Can I ask you two questions before you sit down about the other things because you didn't file a reply brief? Do you have any response to the other side's argument that your request for us to review the transfer order is something that this court has squarely held we don't have jurisdiction to do? That's an interesting one. That's a bit of a red herring, but it's there to put in the case that I've made. Wait, what's a red herring? Your argument's a red herring? Or are published authorities saying we don't have the authority to do something you asked us to do? The argument is a bit of one because I know this court has some limitations there. However, it was important to note this whole case has been about demonizing Patrick McGarrow. When you look at the filing on getting that venue transferred, it didn't look at the factors for convenience or witnesses or anything like that. It looked at Patrick McGarrow's terrible, and by the way, so is Scott Brechner. Sure, but this is a… Do you just admit that you're making the argument knowing that it lacks merit because you think it would sway us? No, that's why I said… It sounded like you just said that you knew the argument was wrong and you made it anyway. No, I thought that this court would be able to review that jurisdiction at any point in time. So you just didn't know that we had a published authority saying we can't do that? You seem to say that you needed to put that information in for some reason knowing that it was prohibited. Oh, absolutely not, Your Honor. No, but it was important the court also knew that as part of that. That's why we didn't focus on just the factors test. We focused on the fact that they were trying to demonize McGarrow. I think the factors test is completely wrong. That was used, and it should have been. It should not have been transferred in the first place. I don't think the court should have had jurisdiction. Which court shouldn't have had jurisdiction? North Carolina. All right. The other question. This New York Times article that you suggest that the district court maybe possibly read that maybe super prejudiced him. What article is… It's like this article is this great unspoken thing. You say he read an article that reports some bad stuff, and you think that biased him. But I don't even know what that article is. Is it anywhere in the record what this supposed article even is? The article is entitled Pardon Brothers' Payout. He's asking what's in the record. Is it in the record anywhere? It was discussed, yes. I believe it was discussed in the May 5th hearing, 2017, by Judge Boyle. Okay. Well, this is the one that you say he alluded to, and they claim he didn't allude to. Yes, Your Honor. The other side, they seem to believe that I was talking about a later New York Times article by the same author, Joe Neff. This article was written and published in the News Observer, the Charlotte Observer, picked up by the Associated Press. I guess my question is, did you ever, as part of your request to recuse Judge Boyle, put in the record the article that you claim prejudiced Judge Boyle against him? It was not necessary based on the affidavit requirement. So that's a no? I did not put that in the record, Your Honor. I put in the affidavit under one particular section, and then of course… But you don't even in that affidavit say, and the article that I believe that Judge Boyle read, which is why I believe he's biased against me, is this. The affidavit is not even named. Sorry, the article is not even named in the affidavit. So we're supposed to say that Judge Boyle abused his discretion for not recusing himself because he supposedly read an article whose name is never mentioned in the record. It was not mentioned as part of your recusal. No, Your Honor. There were two separate sections under which we asked for recusal, as well as the Code of Judicial Conduct. So three different sections. One has an affidavit requirement. One is the other one, which is just a reasonable outside person looking at this would see that it's there. Now, the affidavit supports the other one, but it may not as perfectly outline the media source that was invariably used during that time period. You've got some time on reply. Mr. Higgins, we're happy to hear from you. Yes, thank you, Your Honors. Matthew Higgins for defendants' appellees in this matter. So I heard three arguments that I'd like to respond to from opposing counsel. One was that the conduct of Patrick McGarrow wasn't that bad. Two, that Patrick McGarrow and Al Scott McGarrow are not in privity. And three, that there was some sort of a ratification of the retainer agreement by one of Henry or Leon's guardians. Can you start with two rather than one? Start with privity? Yes. Or you can do something else first, but you can skip the bad part, right? Go to the privity piece once you get over whatever you want. If I do, I do want to correct the record about the May 5, 2017 hearing that I heard opposing counsel reference. He said this morning, as was said in the brief, that the district court referenced the contents of that New York Times article or some other article, which, yes, were pejorative towards how Scott McGarrow did say facts that painted Al Scott McGarrow in a negative light. But that May 5, 2017 hearing was about Henry's competency. There is no mention at all whatsoever about how Scott McGarrow, their conduct or their misconduct. It's not a topic of that proceeding. As we say in our responsive brief, that is a misrepresentation of the record. We put that in our response brief. Judge Hayden, as you mentioned, there was no reply brief filed to respond to that. It is a misrepresentation of the record to say that the district court relied on that, and I do want to highlight that at the beginning of my argument. I will get into privity. The arguments that I heard from opposing counsel are that Al Scott McGarrow and Patrick McGarrow are not in privity because they are separate entities, essentially. But under North Carolina law, a firm and that firm's member are in privity when that member's professional license is being litigated. That's exactly the Klein case, which, again, we talk about at length in our responsive brief, and I didn't hear any reply. Does that mean that if they – I mean, they say they didn't know about certain conduct. They say certain conduct is outside the scope of my authority. If you go out on the street and do something that's completely contrary to your firm's policies and procedures and it results in the forfeiture or your inability to obtain some fees or something like that, is your firm bound by that? Not if the firm's interests and the lawyer's interests diverge, but, of course, that is not this case. How do we know – I mean, you may be right, but if he – if the lawyer handling the case is providing money or arranging for loans, and those are no-goes, we don't do those at our firm, and he did it at that firm, how do we know some of those are things that are done in privity? Well, a few things on that, Your Honor. What I heard from opposing counsel this morning about things that Patrick Magaro did outside of the scope of his relationship with Housecutt Magaro, that is not in this record. That is not in the complaint. That is not in any of – Well, that's partly – it may be, but this is a 12B case, right? So, I mean, that's – I think one of their arguments is that if you're going to decide something on 12B, it needs to be beyond question from the pleadings or whatever else you're able to consider. And here, I'm not sure it's valid or invalid, but, you know, if hypothetically it would take you outside of privity if the firm didn't know and they were acting outside the scope of their authority, why is it okay to do that at a 12B-6 stage and not allow that to be developed? Yeah, two responses to that, Your Honor. First, privity and collateral estoppel are legal issues. They are appropriate for determination at 12B-6, and, indeed, deciding them at 12B-6 furthers their underlying purpose. The underlying purpose of those doctrines is to preserve and promote judicial efficiency. And that's exactly why INCLINE, the North Carolina Court of Appeals, decided privity at the motion that was misphased. That's why this Court did it in Weingarten. And the second thing I'd say is the hypothetical that you're positing is absolutely not this case. The district court – So you – Properly applied – sorry, Your Honor. No, no, no. I don't want to ask you – Properly applied the 12B-6 standard, took all the factual allegations in the complaint, took them as true, drew all inferences in Housecutt-McGarris' favor, looked at publicly available documents or documents that were intrinsic to the complaint, necessary to the complaint, and ruled that under these facts, again, drawing all factual inferences in Housecutt-McGarris' favor, there is privity, there is – Can I ask you – I have a question that sort of builds off Judge Quattlebaum's, is this weird to be doing this at 12B-6. So on page 37 of your brief, you say the district court did not abuse its discretion when it ruled these equitable claims are barred by unclean hands. And that, I will just candidly say, set off a little alarm bell in my life because I think one of the things that I've most fundamentally internalized is that a 12B-6 is always reviewed de novo, that we never, ever, ever defer to district courts on 12B-6. And now you're telling me that in reviewing a district court's grant of a 12B-6, I apply an abusive discretion standard of review, which just seems wrong, deeply wrong to me. So several answers to that, Your Honor. The privity discussion is reviewed under 12B-6, and the factual allegations and whether or not the judge accepted them as true is reviewed under 12B-6. But once those factual allegations are set, how those factors are applied in the unclean hands context is reviewed for an abusive discretion, and that's United Bank v. Buckingham. Is United Bank a 12B-6 case? It's a summary judgment case. Right. So could you cite – well, OK, fair enough. And so – Subject to the same date. Subject to the same – OK. But again, I mean, that only goes to unclean hands. In this case, the Bar Commission found, assuming privity exists, the Commission found that there was a series of bad faith ethical violations, 11 in total, a series of deception, manipulation, exploitation against two extremely vulnerable – Can I ask you something? Yes. I'm trying to decide if this matters in this case, right? So no one is actually trying to sanction the law firm, as I understand it, in the sense of no one is trying to dissolve the law firm, no one is trying to impose a monetary sanction on the law firm. We're not punishing – I mean, yes, I know money is fungible, so in some sense, yes. But I'm trying to figure out to the extent it matters in this case and to the extent that the answer for privity purposes might be different if the question is, are we going to punish the collective entity for the misconduct of one of its partners versus are we simply going to say you essentially can't reap the benefits of the wrongdoing of one of your partners? And does that matter? Does that fit doctrinally? Tell me about that. Yes, Your Honor, that does fit doctrinally. That's the Peter H. Priest case that the district court cited at JA-323. That case held that when a law firm partner or associate commits bad faith ethical violations, that law firm is barred from collecting on equitable theories. And that, I think, completely answers your question. That is what is happening here. That's why the equitable theories – And that would not then commit a court to later than saying that law firm itself has committed a violation of the rules of conduct or that law firm itself should be sanctioned or that law firm itself should have to pay damages, right? No, that rule, the Peter H. Priest rule, only applies when a law firm seeks equitable relief against one of its former clients. The issues that the law firm is in privity with, with Patrick McGarrow, are the 11 bad faith ethical violations that the commission found. And those are enough to dismiss Patrick – those are enough to dismiss how Scott McGarrow's contract claimed. But the commission found that Patrick McGarrow knew that Leon and Henry lacked capacity. But do those points, counsel, apply if the conduct is somehow outside the scope or unknown? I mean, it's unethical, but there – and I know you don't think that's what we have here or that it's not appropriately presented. Maybe you're right. But assume unquivocal – without question, I'm getting dug-dug – that there's no – that it's outside the scope of the authority of the partner and that it's unknown to the partner. Those facts are, without question, undeniable. Is that case – is there privity there? No, there would be no privity in that case, Your Honor, because in that case, the law firm's interests and the interests of the law firm partner would diverge. Privity exists when the representation of one party's right is also the representation of the second party's right. How do we – where is the – how do we know that that didn't occur here? At the 12B6 stage, how do we know that the law firm knew about it and that what he did was within the scope of his authority? Because it – when you're talking about an affirmative defense being decided in a 12B6 stage, which I agree with you, you can do it and you can do it with collateral estoppel, so no quarreling with the general principle. But how do we know that's the case here? How is that clear? I think it's the nature of the lawsuit. What Housecutt McGarrow is seeking is fees that Patrick McGarrow himself incurred. Purportedly, if you look at JA-205, kind of through the next several dozen pages, it lists the fee and the costs that Housecutt McGarrow is trying to recover here. An overwhelming majority are from Patrick McGarrow, over 90 percent. Why does that matter? Because it shows a close alignment of interest between Patrick McGarrow and Housecutt McGarrow. We know that their interests don't diverge. Because the vast majority of the work is done by him? Yeah, because he is the embodiment of the law firm's interest for the purpose of the commission proceeding. And I'd also look to the remedy that the commission imposed here. The commission said Housecutt McGarrow had to give $250,000 to Henry and Leon if he ever wanted to practice law again. And the commission determined that sum by looking to the amount of money that Henry and Leon had previously paid to Housecutt McGarrow. So you can see in the remedy that the commission imposed that there was a close connection between Housecutt McGarrow and Patrick McGarrow. Does it matter here? Hypothetically, right? But imagine that I thought the retainer conduct, the unethical retainer conduct, which is not just signing it with someone who is plainly incapable of doing it, but all the other things that go along with the retainer piece, that that was plainly within, I think as your colleague admits, that was within the scope of his employment. But if that's true for the contract claim, does it matter whether he's in privity with respect to the loans or not? Do you understand what I'm trying to get at? So imagine a scenario where we thought the loans were outside the scope of his employment, and so he was not in privity with the law firm. But if he was in privity with respect to the retainer agreement and all the unethical conduct that went on there, wouldn't that be sufficient to resolve the contract claim? Yes, absolutely, Your Honor. And then in theory you could turn to Peter H. and use that to deal with the equitable claims? That's absolutely correct. The only thing that you need to resolve the contract claim is whether or not Patrick McGarrow knew that Henry and Leon lacked capacity to enter into that contract. And a predicate fact is Leon's lacking that capacity. Because he lacked that capacity, there was no contract, there was no meeting of the minds, and therefore there's no claim for Housecap McGarrow to pursue. And so that resolves the contract claim, full stop, right? And that's privity, contract claim, done. And then we turn to the equitable claims, and that's back to different questions, and I'm not trying to re-talk about those. But we would then have to address those in a different manner, particularly if perhaps there was not privity with respect to each of the 11 findings that were made. Exactly. The only thing that we would need – so, exactly, that's exactly right, Your Honor. For privity, you look at the issues. You look at the factual issues and the legal issues. You look at whether they were actually litigated necessary to the commission's judgment and done by an agency proceeding in a judicial manner. None of those are contested here. Your Honor, I don't have any questions on those. But, yes, that's exactly correct. When dealing with the equitable claims, all you would need to do is look to the Peter H. Priest case, which says a lawyer who commits ethical violations in bad faith, that law firm is barred from collecting fees equitably. And your point being is that the Peter H. case doesn't depend on privity. It just depends on you being a lawyer, particularly a partner, but maybe not even a partner. If you're the partner in the firm, privity or not, the firm can't recover. And this is back to Judge Hyten's question. There are three important limitations on Peter H. Priest. The violations need to be done in bad faith, which, of course, happens here. It needs to be done in connection with the underlying matter, which, of course, happens here. And it needs to be an equitable claim, which I think directly answers Your Honor's question. So, their knowledge, scope of authority you say don't matter? As long as those three limitations are met. And to Your Honor's question, if that seems like a harsh rule, it's meant to discourage this sort of bad faith ethical misconduct that the commission determined occurred here. Well, and part of what mitigates it, again, is just that it extinguishes the firm's ability to win an equitable claim. It doesn't impose liability on the firm. Yeah, exactly. Peter H. Priest says it's something that happens defensively. That's exactly correct. So, this is the be careful who you decide to become law firm partners with principle? I mean that sincerely. That you could view it as the decision to become law firm partners with someone is consequential. And if they do some things bad, it could affect your ability to recover. Yeah. It does present a different risk for a plaintiff's contingency firm than it does for other firms, though, doesn't it? Not necessarily, Your Honor. I mean, this only applies for equitable claims. So, the contingency needs to be a written contract under the North Carolina law. I hear you. But I'm just saying that the reality is if you're getting paid by the hour, that money's not being taken away. Assuming they're paying in a timely manner. Yeah, that doesn't always happen. But anyway, I'm not sure that matters under the law. But it feels like the implications of that rule can be more severe for a lawyer taking a contingency fee case who doesn't get anything to the end. Again, I don't think it would be more severe under a contingency fee case. Why not? You still have a contractual remedy under a written contract, and all contingency fees need to be in writing. So, these are only for equitable claims, Your Honor. And I wouldn't see why that would be any more harsh. Yeah, I haven't thought this issue completely out, so I may be wrong there. But, I mean, in a situation here where the original contract may have been within the scope, but certain wrongful conduct is outside the scope that prevents the equitable relief. I'd have to think it through. It strikes me that it might lead to applications that are different depending on the way you get paid. But maybe I'm wrong on that. I'll give it more thought. Okay, Your Honor. Your Honors, if there are no further questions on privity, I would like to go and discuss a little bit at the outset the arguments that I heard this morning that Ash McCarroll's conduct wasn't that bad. Again, the Commission found here that there was a series of bad faith ethical violations of deception, manipulation, and exploitation. I heard that from this morning that maybe that conduct wasn't so bad because there were efforts to find Henry and Leon guardians. But I want to highlight that Patrick McGarrow, representing Housecutt-McGarrow, fought those efforts tooth and nail. On the May 5, 2017 hearing, Patrick McGarrow resisted the district court's suggestion that Henry needed a guardian ad litem. Once a guardian ad litem was appointed, Housecutt-McGarrow filed a motion for reconsideration. And then later on, once there was additional motions in place for a substitution of counsel, again challenged the guardian's authority. So it's simply not true on this record under the facts presented to this court that Housecutt-McGarrow was somehow engaged in finding Henry a guardian. It was the exact opposite. And in terms of Leon, there was a statement made about Geraldine Ransom. I want to just point out that the commission found that Geraldine Ransom was essentially placed to be Leon's guardian by Patrick McGarrow. This is just a purely question I had. What in the world is an attorney in fact? No, exactly. I mean that sincerely. I have no idea what that means. I'm not sure. He's certainly not someone with power of attorney. There's not any suggestion that there was actually serving as an attorney. And we know that an attorney in fact wouldn't somehow render an incompetent person able to enter into a contract. Because that's why Patrick McGarrow again and again and again resisted the appointment of that guardian. Again, because knowing that an incompetent person, when they have an attorney, they're not able to enter into a contract. They need a guardian in order to do that. And not an attorney or an attorney in fact. There are no further questions. I'm good. Thank you. Thank you, counsel. Mr. Howell-Scott, we're happy to hear from you. Very briefly, your honors, just to address a couple of concerns. I've heard the weren't that bad to reference my thoughts on Patrick McGarrow's behavior. That's not what I said. I said very clearly that some of these I did not think were ethical violations. I still don't have a problem with the language of the contingency fee retainer. I don't get a chance to argue that. I don't get a chance to litigate that. But I don't want to be mischaracterized on what my positions are on those things. I never would in any way, shape, or form condone any kind of ethical violations or taking advantage of a client. So I wanted to make sure we dealt with that. I also want to deal with if we're going to be taking wholesale the findings of the DHC, then we need to take them wholesale. We can't have this diode of privity where it goes one way but doesn't go the other. Specifically, if we look at the- But don't we think about privity on an issue-by-issue basis? But in this issue here- I mean, if you had a DHC proceedings where he also engaged a prostitute, right, we wouldn't say that that has anything to do with the law firm, right? You wouldn't be in privity with respect to that allegation? No, but those are separate issues. What I'm talking about here specifically- But there are 11 separate issues that they raised here, right? Yes, there are multiple different issues. So he could be in privity with your firm on some of them and not with others? Possibly. In theory. But in the brilliance of the DHC, they already compensated for that and accounted for that. If we look at the joint appendix, page 43, and I quote, this proceeding was not designed or intended to calculate the precise value of legal fees defendant collected and the IC award in this case was unearned and should be returned half of it. So there was extensive testimony at the DHC about the work that Patrick McGarrow did and the law firm did. And they said, okay, you may have committed these ethical violations, which they found. They said you're still entitled to be paid. $500,000, you got back. You got to keep $250,000 of that. And that's just on slice one, which was this very small portion. Well, I thought they said they can keep the whole thing, right? Because that's not what DHC does. It says he can keep the whole $500,000. He only has to pay $250,000 back if he wants to be a lawyer again. Well, we can look at it like that. But the clear language the DHC used was they weren't trying to calculate the fees going forward. None of these ethical violations had anything to do with the legal work done during the 1983 civil rights movement. I saw that statement in your brief. I guess I'll just give you a response. I read that statement as saying quite the opposite, which is it's possible this law firm owes these gentlemen even more money. I read it not it's possible they still owe you money. I read it as the DHC saying we are not foreclosing the possibility that this firm owes these individuals even more money than we're ordering you to pay. Why am I wrong in reading it that way? Well, the fact that both of us are reading this completely differently completely underscores why a 12B6 motion needed a hearing to discuss these kinds of issues. But we're going to call the people who wrote this report and ask them what they meant? We'd have to do a fact-finding. If the court wants to adopt this wholly, it's going to have to engage in fact-finding. There's going to have to be evidence presented as to what the DHC actually meant. If it's unclear, the district court can't just impute what it feels like it possibly maybe sort of meant without the ability to put evidence on. If this was very clear and it said the sky is blue, okay, then the court could say the sky is blue. But we're now asking the district court to interpret various different things in here without Hall Scott McGarrill having an opportunity to present evidence. I don't think we're really – maybe I'm wrong. Correct me if I am. I didn't think we were really looking at the disciplinary decision on your claim for fees or not. I thought privity is based on privity. There are cases that talk about equitable relief, and it may be that your firm did some very good work in there. But isn't the effect of, if you're in privity, you don't get to get it under contract, and under the other equitable claims, that you don't get to get it under equitable claims? The district court is dealing with the financial implications of this stuff. The disciplinary agency is dealing with whether the conduct was ethical or not. Partially, but the district court is relying on that in their ruling. But at the same time, they're not addressing issues that were very clear or not addressed by the DHC, including the ratification of the contract by Dwayne Gillum, who no one has made any – the ratification of the contract is not an equitable remedy. I know you feel strongly about that, but that's saying they got it wrong, and we have certain limitations maybe on what we can do there. I think we do in an appellate review in this case, because that was written in Judge Boyle's decision as to why it was sent away, that it wasn't there. There's no contract, but we weren't able to put on any evidence as to the discussions that Dwayne Gillum had with myself, with the law firm, with Patrick McGarrow, about yes, we want you to continue. Yes, I'm going to continue with this. He's asked an open court in December of 2017 if he ratifies this. Judge Boyle is very clear about this, and he's hemming and hawing, and he says, yes, I'm going to continue forward with Paul Scott McGarrow. That's ratification, but we can't present evidence of that and have it on the record for this court to review if the 12B6 never allowed that. Thank you, counsel. As you well know, having been here earlier, we have a tradition here that we greatly value of coming down and greeting counsel and getting a chance to say hello in person. We are not yet back to doing that. We hope we do so in relatively short order, but we thank you for being here. We thank you for your argument, and with that, the court will adjoin us for the day. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Julius N. Richardson, A. Marvin Quattlebaum Jr., Toby J. Heytens